UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**EASTERN DIVISION at PIKEVILLE**

| | | |
|---|---|---|
| MIRANDA SUZANNE SLONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. |
| v. | ) | 7:14-cv-165-JMH |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL | ) | **AND ORDER** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

This matter is before the Court upon cross-motions for Summary Judgment [DE 13, 14] on Plaintiff's appeal of the Commissioner's denial of her application for period of disability and disability insurance benefits. [Tr. 38-52].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will grant Plaintiff's motion, deny the Commissioner's motion, and remand this matter for reconsideration consistent with this Opinion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

2.   An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3.   If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4.   If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5.   If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 43]. Under step two,

2

the ALJ found that Plaintiff's visual disturbances, diabetes mellitus, diabetic neuropathy, depression, anxiety, and somatoform disorder were "severe" as defined by the agency's regulations. [Tr. 43-44]; 20 CFR § 416.920(c).

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and decided that none of them met the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 44-46]. After further review of the record, the ALJ concluded at step four that Plaintiff had a residual functional capacity ("RFC") to perform light work, but was limited as follows:

> Plaintiff can only occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl, and can never climb ladders or scaffolds. Plaintiff has limited visual acuity with her left eye. She should avoid concentrated exposure to vibration, hazards, and allergens. She can understand, remember, and carry out simple and nondetailed tasks, as well as more detailed tasks, with concrete variables. The claimant can maintain concentration and attention for two-hour segments over an eight-hour period and complete a normal work week without excessive interruptions from psychologically based symptoms. She can respond appropriately to supervisors and coworkers in a setting requiring no more than occasional contact with the public. The claimant can adapt to simple, routine changes and avoid hazards in a workplace with reasonable support and structure.

[Tr. 46]. Plaintiff had no past relevant work. [Tr. 51]. The ALJ found, however, that there were jobs in the national economy that Plaintiff could perform. [Tr. 51]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 52].

3

## II. Standard of Review

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

## III. Background

Plaintiff filed a Title XVI application for supplemental security income (SSI), alleging disability beginning on April 21, 2011. [Tr. 41]. Plaintiff was 28 years of age at the alleged disability date, [Tr. 41; 51], and has a high school diploma. [Tr. 75]. She claims to never have worked. [Tr. 201]. Plaintiff claims she has become disabled and unable to work due to her diabetes and diabetic neuropathy, allergies, a cataract in her

4

right eye, chronic fatigue, pain in joints, vision problems, partial color blindness, a sprained right ankle, protein in her urine, memory problems, and depression. [Tr. 200].

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff requested a hearing, which took place on May 16, 2013. [Tr. 41]. The ALJ heard testimony from the plaintiff and the vocational expert ("VE"), Dwight McMillion. [Tr. 41]. The VE testified that a person with an RFC equivalent to the ALJ's findings for Plaintiff could find work. [Tr. 74-75].

After considering all the evidence in the administrative record, including the testimony of the plaintiff and the VE, the ALJ issued an unfavorable decision denying supplemental security income on August 28, 2013. [Tr. 38]. The Appeals Council denied Plaintiff's request for review on October 29, 2014. [Tr. 1]. Plaintiff has exhausted her administrative remedies, and this case is ripe for review under 42 U.S.C. §§ 405(g) & 1383(c)(3).

**IV. Analysis**

The ALJ failed to give good reasons for rejecting the treating physician's opinions; thus, the Commissioner's decision must be reversed and remanded. Plaintiff argues that the ALJ improperly weighed the opinion evidence, violating the treating physician rule by failing to give adequate reason for discounting treating physician Dr. Jack Kendrick's opinion, and

improperly relying on the medical interrogatory of medical expert Dr. Eric Puestow.

As an initial matter, there is no dispute that Dr. Kendrick is Plaintiff's treating physician and that he treated Plaintiff, for a variety of impairments, on a regular basis since 2005. [Tr. 756-803]. In February, 2012, Dr. Kendrick opined that Plaintiff's pain would constantly interfere with her attention and concentration, that she was incapable of even "low stress" jobs, and that she was significantly limited in repetitive reaching, handling, and fingering. He determined that Plaintiff was limited in her ability to sit, stand or walk for more than two hours and that she would need unscheduled breaks because she is unable to do physical labor. However, he also found that she could lift and carry 10 lbs. frequently and twist, stoop, crouch, climb ladders and stairs occasionally. Overall, he opined that she would be absent from work due to her impairments more than four days per month. [Tr. 855-58].

In what is referred to as the treating physician rule, an ALJ is required to give the opinion of a treating source controlling weight if he finds that it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §

404.1527(d)(2), now § 404.1527(c)(2)). The ALJ may decide not to assign controlling weight to a treating source, but in so doing must give "good reason." 20 C.F.R. § 404.1527(c)(2). This means the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996); *see also Wilson*, 378 F.3d at 544-45.

Importantly, an ALJ's decision that a treating physician's opinion is inconsistent with the record or not well-supported "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) ("[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding.").

Here, the ALJ wholly rejected Dr. Kendrick's opinion and offered a relatively brief explanation, stating that Dr.

Kendrick's "limitations appear rather extreme when compared to the claimant's reported activities of daily living and the objective findings of record." Tr. 50. This is not "sufficiently specific" inasmuch as it does not identify the "objective findings of record" or "activities of daily living" that contradict Dr. Kendrick's analysis and cause it to be disregarded. The ALJ also fails to explain why Dr. Kendrick's opinion is not entitled to controlling weight and then fails to weigh, or at least discuss, the factors set forth in 20 C.F.R. § 404.1527(c) to support his conclusion, even though Plaintiff's medical record is extensive. *See Sharp v. Barnhart*, 152 F. App'x 503, 510 (6th Cir. 2005) ("In the face of the extensive records and specific diagnoses introduced by [the claimant], the ALJ's generalized comment that the treating physicians' opinions were not 'based on a solid clinical and diagnostic foundation,' with no elaboration or detail, does not satisfy the procedural requirements for rejecting a treating physician's opinion laid out in § 404.1527(d)(2) [now (c)(2)]."). Accordingly, the Court finds that the ALJ's decision violates the treating physician rule.

The protections set forth in § 1527 are so important that, even were "substantial evidence otherwise supports the decision of the Commissioner," courts will reverse and remand a denial of benefits if the ALJ fails to give good reason for discounting

8

the treating physician's opinion. *Wilson,* 378 F.3d at 543–46. However, the Sixth Circuit has acknowledged that an ALJ's violation of the treating physician rule might be harmless error in the following circumstances, (1) where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) where the Commissioner actually adopts the treating source's opinion, and (3) "where the Commissioner has met the goal of § 1527(d)(2) [now § 1527(c)(2)]. . . even though she has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547. "In the last of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citing *Nelson v. Comm'r of Soc. Sec.,* 195 Fed. App'x 462, 470–72 (6th Cir. 2006)).

This matter does not fall into either of the first two exceptions; the Court finds that Dr. Kendrick's opinion is not "patently deficient," and the Commissioner did not, obviously, adopt it. This leaves the third exception, which the Court finds also does not apply because it remains unclear why the ALJ rejected Dr. Kendrick's opinion from the ALJ's analysis.

For example, although the ALJ extensively discusses Plaintiff's "activities of daily living," this discussion does not help to understand why Dr. Kendrick's opinion was rejected. The ALJ notes that Plaintiff is able to manage self-care, that she watches TV and reads during the day, and can keep track of her finances. [Tr. 49-50]. But this does not contradict Dr. Kendrick's opinions that Plaintiff is incapable of physical labor or in so much pain that she cannot maintain concentration and attention. This evidence is not so "obviously contradictory" with Dr. Kendrick's opinion so as to allow a reasonable reader to infer what problems the ALJ identified in Dr. Kendrick's opinion, nor does it enable the Court to conduct a meaningful review of the ALJ's application of the treating physician rule.

Also, although the ALJ cites to other opinion evidence that he finds consistent with the record, the discussion of these opinions is lacking in detail and equally unhelpful. The ALJ relies heavily on the opinion of Dr. Eric Peustow, a non-examining medical expert, who opined that there was no objective medical evidence to support the limitations identified by Dr. Kendrick. [Tr. 1271]. However, Dr. Peustow's opinion is quite brief and, more importantly, cites no evidence in support of his own findings. [Tr. 1270-72]. Similarly, the ALJ cites to no evidence in support of his decision to assign Dr. Peustow's

opinion great weight, other than the general statement that it is "consistent with the overall evidence of record." [Tr. 51].

Likewise, the ALJ assigns great weight to the state agency consultative examiners but does not discuss those findings, with the exception of a recitation of Dr. Schilling's opinions, which are relegated to Plaintiff's mental impairments. [Tr. 48]. These are the only opinions upon which the ALJ relies, and the ALJ's limited analysis provides little insight into why the ALJ determined they were entitled to great weight and even less insight into why Dr. Kendrick's opinion, in comparison, was rejected.

Moreover, here, the ALJ rejected the opinion of Plaintiff's general practitioner for more than a decade, Dr. Kendrick, in favor of two non-examining sources. Certainly, there are circumstances in which non-examining sources may be entitled to more weight than treating sources. *See* Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). However, more detail than that provided by the ALJ in the instant matter is needed to understand why Dr. Kendrick's opinion was rejected, if even the goal of § 1527(d) is to be met. Therefore, the ALJ's failure to comply with the treating physician rule is not harmless error and the matter must be reversed and remanded.

Plaintiff's other argument, that the ALJ failed to adequately describe the claimant in the RFC, does not require

11

reversal. Plaintiff contends that the ALJ erred because he did not include restrictions for Plaintiff's carpal tunnel syndrome, allergies, and colorblindness in the RFC finding.

"[T]he RFC is meant to describe the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). The RFC is assessed based on "all of the relevant medical and other evidence" and the claimant bears the burden of proof at the RFC stage. 20 C.F.R. § 404.1545(a)(3).

As an initial matter, Plaintiff's claim that the ALJ erred for failing to account for her allergies must be rejected because the ALJ already includes in the RFC finding that Plaintiff "should avoid concentrated exposure to ... allergens." [Tr 46]. Plaintiff cites to no evidence to support a more restrictive finding pertaining to her allergies.

Plaintiff's contention that an additional restriction should be included in the RFC for her carpal tunnel syndrome must also be rejected. Plaintiff identifies no evidence to indicate that she was restricted in the use of her hands during the relevant period because of her carpal tunnel syndrome. Plaintiff cites to state agency physician's finding in March, 2012, in which Dr. William Waltrip finds that Plaintiff had

12

neuropathy in both hands and feet. [Tr. 834]. However, Dr. Waltrip also notes that despite the neuropathy, Plaintiff "could make a fist and had good strength of grip. She could perform fine manipulation without limitation." [Tr. 834]. Although Plaintiff cites to a rheumatology consultation from 2001 that suggests the possibility of early signs of diabetic stiff hand syndrome, [Tr. 430], and an X-ray of Plaintiff's right hand suggesting "possible tendinitis" in 2007, [Tr. 667], these records are reasonably outweighed by Dr. Waltrip's finding in 2012, which is the only statement Plaintiff has identified about the condition of her hands and wrists during the relevant period of alleged disability (Plaintiff claims disability beginning on April 21, 2011). Plaintiff's testimony, alone, is also not sufficient to show the Plaintiff is restricted in use of her hands. *See* 20 C.F.R. § 404.1529(a).

Finally, the Court finds that the RFC already reflects what the Plaintiff "can do" in terms of her visual acuity and, thus, additional restrictions for Plaintiff's colorblindness and right-eye visual impairment are not warranted. Notably, the ALJ considered Plaintiff's colorblindness, concluding that "the claimant's visual disturbances are severe; however, ... they pose minimal limitation in her ability to care for simple, everyday activities." [Tr. 48]. That Plaintiff can manage some self-care tasks and activities of daily living is supported by

13

the record. [Tr. 226-33; 860]. And, Plaintiff identifies no evidence to support her contention that she is more limited by her colorblindness.

Likewise, the RFC finding includes "limited visual acuity with [Plaintiff's] left eye." Plaintiff argues there should also be a restriction for Plaintiff's right eye. There is substantial evidence to support the ALJ's finding of visual impairment in Plaintiff's left and not her right eye, namely Plaintiff's history of vitrectomy surgery and 20/200 vision in the left eye compared to her 20/30 vision in the right. [Tr. 687, 727, 832]. Plaintiff also cites to no evidence to support this argument. Accordingly, the Court finds that the ALJ's findings in the RFC as they relate to Plaintiff's carpal tunnel, allergies, and visual impairments are supported by substantial evidence and without error.

**V. Conclusion**

Accordingly, based on the foregoing, **IT IS ORDERED:**

(1) that Plaintiff's Motion for Summary Judgment [DE 13] be, and the same hereby is, **GRANTED;**

(2) that Defendant's Motion for Summary Judgment [DE 14] be, and the same hereby is, **DENIED;**

(3) the decision of the Commissioner is **REVERSED**, and this matter is **REMANDED,** pursuant to sentence four of 42 U.S.C. §

14

405(g), to the Commissioner for further proceedings consistent with this Opinion and Order.

This the 18th day of August, 2015.



**Signed By:**

_**Joseph M. Hood**_

**Senior U.S. District Judge**